## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REBECCA SANCHEZ, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-20-253-RAW-SPS** |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Rebecca Sanchez requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-two years old at the time of the administrative hearing (Tr. 39). She completed high school and has worked as a customer service representative and police aide (Tr. 22, 229). The claimant alleges she has been unable to work since October 15, 2017, due to epilepsy and a hand injury caused by seizures (Tr. 228).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 22, 2018. Her applications were denied. ALJ J. Leland Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated December 11, 2019 (Tr. 10-23). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that she had the nonexertional limitations of being

unable to climb ladders/ropes/scaffolds, needing to avoid unprotected heights and dangerous moving machinery, and being unable to perform commercial driving (Tr. 14). The ALJ thus concluded that the claimant could return to her past relevant work as a customer service representative or police aide (Tr. 22). Alternatively, he found there was work she could perform in the national economy, *e. g.*, cook helper, counter supply worker, and cart attendant (Tr. 22-23).

## Review

The claimant's sole contention of error is that the ALJ erred in failing to account for her seizure disorder when identifying the jobs she could perform. The undersigned Magistrate Judge agrees with the claimant's contention, and the decision of the ALJ should be reversed.

The ALJ determined that the claimant had the severe impairment of seizure disorder, as well as the nonsevere impairments of headaches and hypertension (Tr. 13). The relevant medical evidence reflects that the claimant kept a seizure log from 2018 through 2019 (Tr. 335-337). Treatment notes from 2019 indicate that the claimant had been off medications due to an inability to afford them, but was prescribed medication in April 2019 for her seizures, with a plan for adjusting the dosage until she no longer experienced them (Tr. 380, 404). On April 2019, the claimant had a normal EEG (Tr. 411-412). Upon taking the medication, she was assessed with fair results and as being compliant with medication, and it was noted that she was not driving (Tr. 390). While reportedly still on her medications, the claimant presented to the emergency room on October 14, 2019 with a complaint of a

seizure where she fell and got a laceration on her face (Tr. 418). At that time, she reported she still experienced seizures almost weekly (Tr. 418).

On August 11, 2018, Dr. Christopher Sudduth conducted a physical examination of the claimant and concluded that she had no impairment (Tr. 367). He noted her reported history of seizure disorder but did no related testing and made no findings as to her seizures (Tr. 364-367). However, he does appear to have completed a "Report of Examination for Seizure Disorder," in which he noted that the claimant reported her most recent seizure five or six days earlier, with seizures occurring approximately once a week and mostly at night. He further noted that she was out of her seizure medication but had taken medications in the past (Tr. 372). She reported an EEG twelve years previously, but stated that her seizures typically occurred with loss of consciousness, alteration of awareness, and convulsive seizures (Tr. 372).

On November 6, 2019, Dr. Daniel Stegman completed an RFC assessment, noting that the claimant experienced tonic-clonic seizures as well as absence seizures, and noting that the dates of her three prior seizures were November 5, 2019; October 14, 2019; and October 4, 2019 (T. 447). He indicated that seizures rendered her unable to perform basic daily tasks, and that it took one to two days to recover from seizures, although accompanying depression took longer (Tr. 448). He noted she was on medication but that her seizures were nevertheless poorly controlled, and that the medication also caused lethargy and lack of alertness (Tr. 448-449). As to limitations, he indicated that she could not work at heights or with power machines, nor could she operate a motor vehicle (Tr.

449).  Finally, he indicated that her seizures would result in good days and bad days and that she would likely be absent from work about four days per month (Tr. 450).

In September 2018, Dr. Karl Boatman reviewed the record and found that the claimant could perform work at all exertional levels, but that she should avoid even moderate exposure to hazards due to her history of seizures (Tr. 72-73).  Upon reconsideration in December 2018, Dr. David Coffman reviewed the record and agreed that the claimant could perform work at all exertional limitations, but he further found that the claimant should never climb ladders/ropes/scaffolds, and that she should avoid working in unprotected heights, near unprotected/hazardous moving machinery, and driving a motor vehicle secondary to seizures (Tr. 103).

At the administrative hearing, the ALJ inquired of the vocational expert ("VE") as to the claimant's past work, which was identified as customer service representative and police aide (Tr. 49).  The ALJ then propounded a hypothetical in which an individual "would have no exertional limitations; however, would be unable to climb ladders, ropes or scaffolding; would need to avoid unprotected heights and dangerous moving machinery; and would be unable to engage in any type of commercial driving."  (Tr. 50).  The VE indicated that such a person could perform the claimant's past relevant work, in addition to the jobs of cook's helper, counter supply worker, and car attendant (Tr. 50).  Upon further questioning, the VE stated that all the jobs identified would be eliminated if the claimant were absent from work more than two days per month for consecutive months (Tr. 52).  The VE testified that her testimony was consistent with the Dictionary of

Occupational Titles, and that she only considered what was contained in the ALJ's hypotheticals and questions (Tr. 51, 53).

In his written opinion at step four and as relevant to this appeal, the ALJ summarized the claimant's hearing testimony and a number of her own reports about her limitations, as well as reports from her boyfriend (Tr. 15-17). The ALJ then summarized the claimant's treatment records and Dr. Stegman's assessment (Tr. 17-21). He found Dr. Coffman's reviewing opinion more persuasive and consistent with examination findings and noted that he also adopted a limitation of no commercial driving but noted that he found it troubling the claimant still had a driver's license and continued to drive by report (Tr. 20-21). As to Dr. Stegman's opinion, the ALJ disregarded any opinion as to the claimant's ability to work as an issue reserved to the Commissioner, and essentially disregarded the rest of his opinion because he stated the claimant's limitations had existed since 2016 despite only treating her beginning in 2019, and because she was alert and oriented following a 2019 seizure where she presented to the emergency room (Tr. 21). He further found the claimant's seizure diary inconsistent with the medical record (noting, *inter alia*, that she reported a last seizure on April 22, 2019, but that her diary reflected it was on April 21, 2019) (Tr. 21). The ALJ thus concluded that the claimant could perform her past relevant work as a customer service representative and police aide (Tr. 22). Alternatively, he concluded she could perform work as a cook helper, counter supply worker, or cart attendant (Tr. 23).

The claimant contends that the ALJ failed to properly account for her seizure disorder when his hypothetical to the VE included no direct connection or reference to her

seizures and the functional effects of them.  The undersigned Magistrate Judge agrees.  The Tenth Circuit has instructed that an ALJ's inclusion of *presumed* "seizure precautions" without specific information regarding them is insufficient to relate "*with precision* all of the claimant's impairments."  *Tucker v. Barnhart*, 201 Fed. Appx. 617, 624 (10th Cir. 2006) ("The omission of any specific information about Ms. Tucker's seizures from the ALJ's hypothetical questions—such as potential frequency, type of seizure activity, and any post-ictal effects found by the ALJ—undermines the VE's testimony about jobs potentially available to Ms. Tucker and the ALJ's determination that she can engage in substantial gainful activity despite her seizure disorder.") (emphasis in original) (*citing Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.") (quotation omitted)).  *See also Griffin v. Astrue*, 2012 WL 725694, at *12 (S.D Ohio March 5, 2012) ("[T]he case law is clear that when a claimant suffers from a seizure disorder, the administrative law judge, in addition to restricting the claimant from performing certain hazardous activities which are inconsistent with occasional seizures, has an obligation to describe for the vocational expert the frequency, nature, and duration of plaintiff's seizures based upon the evidence of record. . . . Many other courts have imposed a similar requirement.") (collecting cases, including *Tucker*).

The Commissioner asserts that *Tucker* is distinguishable because that case is solely a step five case while the present case is a decision made at both steps four and five.  The Commissioner further asserts that the ALJ did make findings as to the frequency, type of

seizure, and post-ictal effects, because the ALJ's findings in his written opinion were unchallenged on appeal, and the ALJ is only required to include limitations he found supported by the record.  The Commissioner finally notes that the VE testified that the claimant could miss up to two days a month and the ALJ ultimately determined the claimant had less than one grand mal seizure a month.  However, the undersigned Magistrate Judge finds that the ALJ clearly did not engage in any sort of discussion with the VE about specific seizure information in his discussion with the VE, including in the hypothetical.  *See Tucker*, 201 Fed. Appx. at 624.  Moreover, the ALJ relied on the VE testimony in order to determine her past relevant work; the absence of discussion regarding her seizure disorder at step five is problematic for similar reasons at step four.

Because the ALJ failed to properly account for the claimant's seizure disorder as required by Tenth Circuit law, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

-9-

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**